UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT IRISH, <br><br> Plaintiff, <br><br> v. <br><br> CNA INSURANCE COMPANY and CONTINENTAL CASUALTY COMPANY, <br><br> Defendant. | No. 20 CV 904 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Irish worked in insurance claims for defendants CNA Insurance Company and Continental Casualty Company for just under a year.[1] Irish, who is 64 years old, claims that during his employment defendants discriminated against him based on his age. He also argues that his termination was the product of unlawful retaliation and that, before he accepted the job, a CNA supervisor made promises about the nature of the job that turned out to be false. Irish sues CNA and Continental for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, and for retaliatory discharge and promissory estoppel under Illinois common law. Defendants move to dismiss the state-law claims under Federal Rule of Civil Procedure 12(b)(6). Defendants' motion is granted.

---

[1] Defendants claim that Irish was employed by only Continental, and that CNA is incorrectly named as a defendant. [23] at 1 n.1. Plaintiff amended his complaint to add Continental but argues that the identity of his actual employer is still in dispute. [25] at 8. The issue ultimately has no bearing on the motion to dismiss. For present purposes, I refer to plaintiff's employer as "CNA" or "defendants."

I.   **Legal Standards**

A complaint must contain a short and plain statement that plausibly suggests a right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but it need not do the same for legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

II.  **Facts**

Irish worked as a claims consultant for defendants, managing investigations of legal malpractice claims, determining whether to settle or litigate claims, negotiating settlements, and making recommendations on resolution strategies to management. [19] ¶¶ 13–16.[2] At an interview before Irish accepted the job, CNA Assistant Vice-President Ted Ewing told Irish "(1) that he would have a lot of autonomy in managing his cases, and (2) that [his] caseload would consist of approximately 135 cases." *Id.* ¶ 34. Relying on these statements, Irish decided to accept a job with CNA and leave a good position with his previous employer. *Id.* ¶ 35. After starting his job, however, Irish discovered that he had very little autonomy over his cases and that his caseload exceeded Ewing's estimates. *Id.* ¶ 36.

---

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the first amended complaint, [19], and plaintiff's opposition to the motion to dismiss, [25].

2

Irish nevertheless worked at CNA for just shy of a year. At his first performance review about three months into the job, Irish's direct supervisor, Tony Vranas, told him that he was meeting all expectations. *Id.* ¶ 17. Three months later, at the end of 2018, Vranas said Irish "Achieved Most Goal Measurements." *Id.* ¶ 18.

But a conflict soon developed between Irish and Vranas. On three separate occasions, Vranas required Irish to assign the defense of New York legal malpractice lawsuits to a specific New York attorney. *Id.* ¶ 19. Based on his 20 years of claims experience, Irish found it highly unusual that a claims manager like Vranas would be so involved in attorney assignments. *Id.* ¶ 20. Irish told Vranas that the assignment demands were inappropriate and not in the best interests of CNA's insureds. *Id.* ¶ 21. Vranas said that the attorney in question was a current member of the New York Bar committee that voted on whether CNA was the endorsed legal malpractice carrier of the New York State Bar. *Id.* ¶ 22. Irish objected again: CNA had a duty to make attorney assignments in the insureds' best interests and free from conflicts of interest. *Id.* ¶¶ 22–23; [25] at 1–2. Unphased, Vranas ordered Irish to continue to assign the same attorney as defense counsel. [19] ¶ 22.

In April 2019, Vranas put Irish on a 45-day performance improvement plan. *Id.* ¶ 24. Although Irish was meeting all the required metrics under the original plan, CNA gave him repeatedly shifting objectives, goals, and requirements. *Id.* ¶ 25. In early May 2019, Irish told Ewing (who was Vranas's supervisor) that he believed the performance plan was not being administered fairly because Vranas did not recognize Irish's significant progress and accomplishments. *Id.* ¶¶ 26–27. Ewing told Irish that

he was concerned with the "velocity" of his work, and that he was concerned that Irish could not "keep up with the younger folks." *Id*. ¶ 28. Irish responded that he had met all of the deliverables while on the performance plan. *Id*. ¶ 29. About a week after the phone call, Vranas emailed Ewing to recommend Irish's termination. *Id*. ¶ 30. CNA terminated Irish's employment the next day. *Id*. ¶ 31.

Irish argues that his termination violated public policy because he was fired for objecting to a breach of the duty of good faith and fair dealing to CNA's insureds. *Id*. ¶¶ 44–46. Irish also claims that Ewing's pre-employment statements were unambiguous promises regarding the nature of the job, on which he foreseeably and detrimentally relied. *Id*. ¶¶ 50–53. Irish sues defendant for age discrimination under the ADEA (Count I), retaliatory discharge (Count II), and promissory estoppel (Count III). Defendants move to dismiss Counts II and III.

### III. Analysis

#### A. Retaliatory Discharge

Illinois's retaliatory discharge tort is a "narrow exception" to the general rule that "a noncontractual or at-will employee may be discharged by his or her employer at any time and for any reason." *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶ 28. To sustain a cause of action for retaliatory discharge, an employee must show: "(1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities (causation), and (3) the discharge violates a clear mandate of public policy." *Id*. ¶ 31. Only the third element is in dispute here.

An employer cannot "effectively frustrate a significant public policy by using its power of dismissal in a coercive manner." *Id.* ¶ 30. Protection from retaliatory discharge in such cases is "considered necessary to vindicate the public policy underlying the employee's activity, and to deter employer conduct inconsistent with that policy." *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 508 (1991). The goal is to maintain the proper balance "among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 129 (1981).

To strike this balance, Illinois courts adhere to "a narrow definition of public policy." *Turner v. Memorial Medical Center*, 233 Ill.2d 494, 507 (2009). A public policy "is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions" and "must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Palmateer*, 85 Ill.2d at 130. The public policy must be clear, and a retaliation claim will be "denied where it is equally clear that only private interests are at stake." *Id.* at 131.

Although "there is no precise definition," Illinois courts have allowed retaliatory discharge actions in two settings: (1) when an employee is discharged for filing, or in anticipation of filing, a worker's compensation claim, or (2) when an employee "is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistleblowing.'" *Michael*, 2014 IL 117376, ¶ 30. For example, firing an employee for providing information to law enforcement of an employer's

5

allegedly criminal activity violates a clearly mandated public policy. *Palmateer*, 85 Ill.2d at 133–34. On the other hand, courts have repeatedly rejected retaliatory discharge claims that advance broad and unspecific policies. *See Turner*, 233 Ill.2d at 507–08 (holding that "patient safety" is not a clearly mandated public policy); *see also id*. at 503 (collecting cases holding that the right to marry a coworker, product safety, promoting quality health care, and upholding the Hippocratic Oath are insufficiently specific to identify a clear public policy).

Here, Irish claims that he was fired for voicing objections to a "clear conflict of interest between Defendants and their insureds, and breach of the duty good faith and fair dealing that Defendants owed to their insureds." [19] ¶ 45. He argues that the covenant of good faith and fair dealing "falls within the broad categories of [a] 'citizen's social rights, duties, and responsibilities.'" [25] at 4 (quoting *Palmateer*, 85 Ill.2d at 130). Irish claims that defendants' "contractual discretion to assign their insureds' lawsuits to specific attorneys" was not "exercised reasonably and with proper motive," nor within "the reasonable expectations of their insureds." [25] at 4.

But Irish cites no case extending the definition of clearly mandated public policy to the implied contractual duty of good faith and fair dealing. That duty is about private contracts—here between an insurance company and its insureds—and is "used only as a construction aid in determining the intent of contracting parties" to ensure that contracting parties "do not take advantage of each other." *Cramer v. Insurance Exchange Agency*, 174 Ill.2d 513, 523–24 (1996).

The absence of authority is not surprising: the retaliatory discharge tort is a limited exception to the general rule of at-will employment. A narrow construction of the public-policy element, moreover, is essential for employers to "know that they may discharge their at-will employees for any or no reason unless they act contrary to public policy;" and for "the public interest in the furtherance of its public policies, the stability of employment, and the elimination of frivolous lawsuits." *Turner*, 233 Ill.2d at 507. Expanding the definition of public policy to cover an employer's private contractual duties would significantly upend the balance struck by Illinois courts.

Characterizing his conduct as whistleblowing about conflicts of interest does not save Irish's claim. Not every report of wrongdoing advances the public policy cognizable within the retaliatory discharge tort. There is no allegation that Irish reported any criminal wrongdoing. The claimed conflict relates to the private contract between an insurance company and its insureds. While CNA should treat its insureds fairly and without conflicts of interest, a party's performance of a contract does not strike at the heart of a citizen's social responsibilities. Irish did not reveal a tear in the fabric of society, and his employer did not violate a clear mandate of public policy when terminating his employment.

The retaliatory discharge claim is dismissed.

### B. Promissory Estoppel

A plaintiff alleging promissory estoppel must prove that "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendant, and (4) plaintiff

7

relied on the promise to its detriment." *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 95.

Irish's promissory estoppel claim doesn't make it past step one. Irish argues that Ewing's two statements—that Irish would "have a lot of autonomy managing his cases," and that his "caseload would consist of approximately 135 cases"—were unambiguous promises that "do not leave terms broadly undefined and do not lead to multiple interpretations." [19] ¶¶ 34, 50; [25] at 6. Both statements, however, are clearly indefinite and open to interpretation. How much, for example, is "a lot" of autonomy? Does "a lot" mean complete autonomy, or something less? Does it simply mean "a lot of autonomy" compared to plaintiff's previous job, or compared to similar insurance claims' jobs, or compared to similar jobs across industries? Because "a lot of autonomy" might reasonably mean any of these things—or something else entirely—it is too vague to form the basis of a promissory estoppel claim. The same goes for Ewing's estimate of Irish's prospective workload. The modifier "approximately" shows that caseload figures were fluid and might exceed 135. By just how much remains unclear, but in any event, Irish has failed to allege that his caseload was substantially higher than Ewing's estimate.

The promissory estoppel claim is dismissed.[3]

---

[3] Defendants also argue that Irish's promissory estoppel claim is barred by the statute of frauds, 740 ILCS 80/1. *See* [23] at 8–9; [29] at 5–6. But the statute of frauds is an affirmative defense that the complaint need not anticipate. Fed. R. Civ. P. 8(c)(1); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). A court should refrain from granting a Rule 12(b)(6) motion on affirmative defenses unless "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *Brownmark Films*, 682 F.3d at 690. Put differently, "the plaintiff must affirmatively plead himself out of court." *Chicago Building*

## C. Leave to Amend

Plaintiff requests leave to amend the complaint. [25] at 7–8. Under Federal Rule of Civil Procedure 15(a)(2), a court should freely give leave to amend when justice so requires. An initial dismissal for failure to state a claim should be without prejudice, and leave to amend should be freely given unless it is certain from the face of the complaint that any amendment would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015).

Amendment of Irish's retaliatory discharge claim would be futile. Irish's claim depends entirely on the incorrect legal theory that an insurance company's conflict-free performance of the duty of good faith and fair dealing is a clearly mandated public policy. No additional facts or arguments will cure this purely legal defect. Count II is dismissed with prejudice.

On the other hand, while Irish fails to state a promissory estoppel claim, it is not certain from the face of the complaint that any amendment would be futile. If Irish repleads, he should be prepared to show that an unambiguous promise was made (along with the other elements of promissory estoppel). Plaintiff has leave to amend the complaint on the promissory estoppel claim.

## IV. Conclusion

Defendants' motion to dismiss [22] is granted. Count II is dismissed with prejudice. Count III is dismissed without prejudice. Plaintiff has leave to file an

---

*Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014). The complaint does not definitively establish that no signed writing of Ewing's statements exists, or that performance of the promise could not have been completed within one year.

9

amended complaint with respect to Count III by November 16, 2020. The parties shall file a status report with a proposed discovery schedule by November 16, 2020, and the court will set a deadline for any amendments to the pleadings after reviewing the parties' proposed discovery schedule.

ENTER:

                                                                       Manish S. Shah
                                                                       United States District Judge

Date: October 26, 2020